FILED 18 NOV '11 11:25 USDC-ORE

UNITED STATES DISTRICT COURT
FOR OREGON
EUGENE DIVISION

HONORABLE JUDGE MICHAEL R. HOGAN

| | |
|---|---|
| Lawrence James Saccato<br>Plaintiff ProSe' | §<br>§<br>§    Case No:10-CV-06244-HO<br>§ |
| Vs. | §<br>§ MEMORANDUM OF POINTS<br>§ AND AUTHORITIES IN SUPPORT |
| U.S. Bank National Association N.D. | § OF MOTION FOR SUMMARY<br>§ JUDGMENT IN FAVOR OF |
| Co-Defendant | § PLAINTIFF<br>§ |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. STATEMENT OF FACTS

Plaintiff's complaint for Defendant's continual violation of Plaintiff's civil rights is based on the
Fair Credit Reporting Act § 619. .

### II. STATEMENT OF LAW

By this motion of summary judgment, brought pursuant to FRCP Rule 56, Plaintiff contends

Defendant is yet again in violation of [15 U.S.C. § 1681] AND is a grounds for motioning the

court to proceed with summary judgment.

### SUMMARY JUDGMENT STANDARD

Plaintiff requests that this Honorable Court enter summary judgment on the issue of the

liability of US Bank in favor of plaintiff. Summary judgment is proper pursuant to Rule 56 of

the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial." *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995); *Riggs v. Anthony Auto Sales*, 32 F. Supp. 2d 405 (1998 Westlaw 663346) (U.S.D.C. W.D. La. 1998); *Simpson v. Anthony Auto Sales*, 32 F. Supp. 2d 407 (1998 Westlaw 663350) (U.S.D.C. W.D. La. 1998). If the movant demonstrates the absence of a genuine issue of material fact, "the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.* Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant, the summary judgment should be granted. *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993).

Plaintiff submits that he has presented adequate undisputed facts, through the pleadings, depositions, answers to interrogatories, admissions on file and any affidavits, supporting a finding that there is no genuine issue as to any material fact to a finding that Plaintiff has proven that Cavalry has repeatedly violated the FCRA, in multiple respects, and that Plaintiff is entitled to the entry of a Judgment as a matter of law. Fed.R.Civ.Proc. 56.

## FAIR CREDIT REPORTING ACT'S PURPOSE AND CONSTRUCTION

The *FCRA is designed to protect consumers from inaccurate or arbitrary information in a consumer report and to establish credit reporting practices that utilize accurate, relevant and current information in a confidential and responsible manner*. St. Paul Guardian Ins. Co. v. Johnson, 884 F.2d 881 (5th Cir. 1989) (Tex.); *Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir.

1986)(La.); *Hovater v. Equifax, Inc.*, 823 F.2d 413, 417 (11th Cir. 1987); *Nikou v. INB Nat. Bank*, 638 N.E.2d 448 (Ind. App. 5 Dist. 1994). Further, it is fashioned so as to protect the credit worthiness and reputation of every consumer. *Ackerly v. Credit Bureau of Sheridan, Inc.*, 385 F. Supp. 658 (U.S.D.C. Wyo. 1974); *Klapper v. Shapiro*, 586 N.Y.S.2d 846 (N.Y. Sup. 1992). The FCRA was crafted to protect consumers from the transmission of inaccurate information about them. *Kates v. Croker National Bank*, 776 F.2d 1396, 1397 (9th Cir. 1995).

The **FCRA, like the other portions of the Consumer Credit Protection Act of 1968, is to be liberally construed.** *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995) (Cal.). It's provisions are to be construed in favor of recovery by the consumer and against the credit reporting agency, user of credit information and other violator. *Id.* The FCRA is "**to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report.**" *Equifax, Inc. v. Federal Trade Comm'n*, 678 F.2d 1047, 1048 (11th Cir.1982), quoting S.Rep. No. 517, 91st Cong., 1st Sess. 1 (1969).

## CONSUMER REPORT AND CREDIT REPORTING AGENCY AS DEFINED IN THE FCRA

Virtually every credit report is a "consumer report," however not every "consumer report" will be a "credit report." Consumer reports encompass any and all written communications from a consumer reporting agency which bear on the credit worthiness, character, credit capacity, etc., of a consumer. 15 U.S.C. 1681, *et. seq.* A "consumer report" is virtually any information communicated by a consumer reporting agency for purposes set forth in the FCRA. *Hoke v. Retail Credit Corp.*, 521 F.2d 1079 (4th Cir. 1975) (N.C.). Under the current law, banks, retailers and other entities furnishing information based on their own experiences with consumers are usually not "consumer reporting agencies," subject to all the provisions of the FCRA. *Lois Digianni v. Stern's*, 26 F.3d 346, 1994 Westlaw 259498 (2d Cir. 1994) (N.Y.); *Smith v. First*

*Nat. Bank*, 837 F.2d 1575 (11th Cir. 1988) (Ga.); *Alvarez Melendez v. Citibank*, 705 F. Supp. 67 (U.S.D.C. Puerto Rico 1988); *Laracuente v. Laracuente*, 599 A.2d 968 (N.J. Super. 1991); *Mitchell v. First National Bank of Dozier*, 505 F. Supp. 176 (U.S.D.C. Ala. 1981). Such persons or entities may be held liable under the "user" and "furnisher" provisions of FCRA and theories of state law, not precluded by the FCRA, including defamation for disseminating false information about the consumer. *Alvarez Melendez*, *supra*; *Laracuente*, *supra*; *Mitchell*, *supra*; *Geeslin*, *supra*.

## THE CREDIT REPORT

The standard credit report contains a vast amount of personal information, trade line (account) information, and public record data. The report also contains a listing of credit inquiries, who are those persons who have peered into the consumer's file, and "credit scoring," including denial codes/risk factors (which are the credit reporting agencies' factor and evaluation of the consumer's credit data and suggested ostensible reasons to deny credit, etc., if the creditor chose to do so) which is the credit bureau's numerical assessment of the consumer as a credit risk.

## NEGLIGENT AND WILLFUL NONCOMPLIANCE OF FCRA

To be in willful non-compliance with the FCRA, a defendant must have knowingly and intentionally committed an action or inaction in conscious disregard for the rights of others. Proof of malice or evil motive is not necessary. *Stevenson v. TRW, Inc.*, 987 F.2d 288, 293 (5thCir. 1993); *Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir. 1986); *Fischl v. GMAC*, 708 F.2d143, 151 (5th Cir. 1983); *Jones v. Credit Bureau of Huntington, Inc.*, 703 F. Supp. 897 (U.S.D.C. Kan. 1988).

## OBJECTIVE STANDARD OF ACCURACY

The standard of accuracy for credit reports embodied in FCRA is objective measure that should be interpreted in even-handed manner toward interests of consumers and creditors in fair and accurate reporting. *Cahlin v. GMAC*, 936 F.2d 1151 (11th Cir. 1991) (Fla.); 15 U.S.C. 1681e(b). Technical accuracy is not the standard, a consumer report must be accurate to the maximum possible extent. In essence, the trier of fact must weigh potential that information will

create a misleading impression against availability of more accurate information and the burden

of providing such information. *Alexander v. Moore & Associates, Inc.*, 553 F. Supp. 948

(U.S.D.C. Hawaii 1982); *Cisneros v. U.S. Registry, Inc.*, 46 Cal. Rptr.2d 233, 39 C.A.4th 548

(Ca. App. 2d Dist. 1995).

## MISLEADING REPORTS ARE NOT "ACCURATE"

Determining accuracy means assessing more than factual truthfulness and requires

analyzing the reportings for their potential to mislead. This factor must be weighed against the

availability of more accurate information and the burden of producing such information. Minimal

research discloses that the mixed file problem (also called merged or mis-merged file problem) is

monumental. Father-son, Junior-seniors, common names, etc. Accuracy has never been the credit

reporting agencies' concern; profits are. *Alexander v. Moore and Associates, Inc.*, 553 F. Supp.

948 (U.S.D.C. Haw. 1982); *Koropoulos v.The Credit Bureau, Inc.*, 734 F.2d 37 (D.C. Cir. 1984).

## ACCURACY IN TERMS OF THE SUBJECT OF THE REPORT

The consumer reporting agency's and furnisher's duties to conduct reasonable

reinvestigation, after accuracy of information is disputed, is not terminated by fact that

information is accurate about someone else if that information is presented in such a manner as

to create inaccurate impressions as to the credit history of a particular individual. *Lowry v. Credit

Bureau, Inc. of Georgia*, 444 F. Supp. 541 (U.S.D.C. Ga. 1978).

## REASONABLENESS TEST

Reasonableness of a defendant's behavior and procedures are assessed by balancing "the

potential harm from inaccuracy against the burden of safeguarding against such inaccuracy."

*Jones v. Credit Bureau of Garden City, Inc.*, 703 F. Supp. 897 (U.S.D.C. Kan. 1988).

## FALSE CREDIT REPORTING SERVES NO PURPOSE BUT TO HARM

An erroneous or careless report serves no purpose but to substantially damage the target of the report, who after publication can do little to correct the damage caused by the report. *Bartels v. Retail Credit Co.*, 175 N.W.2d 292 (Neb. 1970); *McKenzie v. E.A. Uffman & Associates d/b/a Collection Department, Credit Bureau of Baton Rouge*, cause no. 95-1793-A, United States District Court, Middle District of Louisiana (unpublished, July 30, 1996), (court noted that collection activity is an implication that "a failure to pay one's bills will affect his ability to obtain credit in the future, citing *Wright v. Credit Bureau of Georgia*, 555 F. Supp. 1005 (U.S.D.C. N.D. Ga. 1983)).

The Court in *Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir.1982), cited a statement by Representative Sullivan, a sponsor of the FCRA, during debate on the House floor:

". . . (W)ith the trend toward computerization of billions and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage to buy a home." (emphasis by the Court).

A cause of action for damage to one's credit rating is a tort-based claim. See, example, *Rusher v. Winningham Nissan Volvo*, 550 So.2d 784 (La. App. 2 Cir. 1989); *Patterson v. Livingston Bank*, 509 So.2d 6 (La. App. 1 Cir. 1987). The "ability to report on the credit habits of its customers is a powerful tool designed, in part, to wrench compliance with payment terms from its cardholder." Thus, like its symbiotic customers, a credit reporting agency's "refusal to correct mistaken information can only be seen as an attempt to tighten the screws on a non-paying customer." *Miranda-Rivera v. Bank One*, 145 F.R.D. 614, 1993 Westlaw 30681

(U.S.D.C. Puerto Rico 1993); "Credit Cards In America," The John Marshall Journal of Computer and Information Law, John Marshall Law School Law Review, Chicago, Illinois, Vol. XIII, Issue 4, pp.573-584 (Summer, 1995).

## TRIGGERING FCRA-BASED CLAIMS AND COMMON LAW CLAIMS

The requirement that the consumer sustain some injury to establish a cause of action is triggered when the consumer reporting agency issues an erroneous reports to an institution with whom the consumer was (is) dealing. *Hyde v. Hibernia Nat. Bank in Jefferson Parish*, 861 F.2d 446 (5th Cir. 1988), cert. denied, *Credit Bureau Services–New Orleans v. Hyde*, 109 S. Ct. 3199, 491 U.S. 910, 105 L. Ed. 2d 706. If consumer proves malice or willful intent to injure then injury to consumer is presumed and damages are presumed. *Rasor v. Retail Credit Co.*, 87 Wash.2d 516, 554 P.2d 1041.

## THE FCRA LACKS ANY DEFINITION OF "WILLFUL"

The FCRA describes violations of the Act as negligent or willful. While the courts have routinely adopted the plain language meaning of "negligent," the courts have not been so clear about what "willful" means. It might be that due to the imposition of exemplary or punitive damages for willful violations, the court have used more conservative and strict definitions of willful. The question is why? The FCRA is to be liberally construed and in favor of the consumer and recovery by the consumer. The FCRA was crafted to protect consumers, not credit reporting agencies, from the transmission of inaccurate information about them. *Kates v. Croker National Bank*, 776 F.2d 1396, 1397 (9th Cir. 1995); *Wilson v. Rental Research Services, Inc.*, 165 F.3d 642, 643 (8th Cir. 1998). It is to be liberally construed. *St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881 (5th Cir. 1989) (Tex.); *Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir. 1986) (La.); *Hovater v. Equifax, Inc.*, 823 F.2d 413, 417 (11th Cir. 1987); *Nikou v. INB Nat. Bank*, 638 N.E.2d 448 (Ind. App. 5 Dist. 1994); *Ackerly v. Credit Bureau of Sheridan, Inc.*, 385 F. Supp. 658 (U.S.D.C. Wyo. 1974); *Kates v. Croker National Bank*, 776 F.2d 1396, 1397 (9th

Cir. 1995); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995) (Cal.).

Further, the law is very clear in that "(I)n the absence of statutory definition, a statutory

term will be accorded its ordinary meaning." *Romine v. Diversified Collection Services, Inc.*, 155

F.3d 1142 (9th Cir. 1998); *Northwest Forest Resource v. Glickman*, 82 F.3d 825, 833 (9th Cir.

1996). One must look to the clear language and plain words as a presumption exists that the

Congress intended the plain language to apply in light of the purpose of the statute. *Louisiana*

*Credit Union League v. U.S.*, 693 F.2d 525 (5th Cir. 1982) (La.); *Perrin v. U.S.*, 100 S. Ct. 311,

444 U.S. 37 (1979); *Clardy v. U.S.*, 760 F.2d 590 (5th Cir. 1985); *State of Louisiana, ex rel*

*Guste v. U.S.*, 656 F. Supp. 1310 (U.S.D.C. W.D. La. 1986), affirmed, 832 F.2d 935 (5th Cir.).

What does "willful" really mean? "Willful" means "not accidental," or "on purpose,

hence, knowingly, intentionally, and carelessly done in violation of law, and in disregard of the

safety of the public." *Coleman v. White*, 95 S.W.2d 1018, 1019 (Ct. Civ. App. Beaumont 1936);

*Bowers v. Bingham*, 159 S.W.2d 576, 577 (Ct. Civ. App. Amarillo 1942); 68 C.J.S. sec.3, p.268.

"Willful" also means "not accidental." *Southern Fleet Leasing Corp. v. Brown*, 257 So.2d 819

(La. App. 1 Cir. 1972).

"Willful" also means "proceeding from a conscious motion of the will; voluntary;

knowingly; deliberate; intending the result which actually comes to pass; designed; intentional;

purposeful; not accidental or involuntary." *Grant v. Natchitoches Manor Nursing Home*, 696

So.2d 73, 76 (La. App. 3 Cir. 1997), w.d., 701 So.2d 1330 (La. 1997); *Parfait v. Gulf Island*

*Fabrication, Inc.*, 733 So.2d 11 (La. App. 1 Cir. 1999); *Friendly Finance Service, Mid City, Inc.*

*v. Sanders*, 251 So.2d 644 (La. App. 2 Cir. 1971); Black's Law Dict. (6th ed. 1990), p.1599.

Other courts have found that "willful" means a thing done without ground for believing it

is lawful, or conduct marked by **careless disregard whether or not one has the right so to act.**

*Johnson v. Aymond*, 722 So.2d 1224, 1234 (La. App. 3 Cir. 1998); *U.S. v. Murdock*, 290 U.S.

389, 54 S. Ct. 223, 78 L. Ed. 2d 381 (1933). "Willful" connotes an act which is intentional, or

knowing, or voluntary, as distinguished from accidental or pure happenstance. *Id.*

In *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829, 834 (8th Cir. 1976), the Eighth Circuit upheld an award of punitive damages where the credit reporting agency acted to mislead the consumer about the contents of his credit file and flatly refused to reveal the contents of the credit file. The court noted that defendant sought to block plaintiff in his attempt to secure the rights given to him by the FCRA. Not only did defendant delay and mislead plaintiff on the occasion of his first request for disclosure, but it even did so on a second and third occasion. . .." Plaintiff respectfully suggests that the definition of willfulness ("willful misrepresentations or concealment") in *Stevenson v. TRW*, 987 F.2d, at 294, and as adopted by *Matise v. Trans Union Corp.*, 1998 Westlaw 872511 at p.6 (U.S.D.C. N.D. Tex. 1998), was far too restrictive and was designed to address the particular facts in those cases. *Matise* holds that plaintiff must show more than "that the consumer reporting agency failed to investigate adequately and correct information contained in a consumer report."

The District Court in a very similar case held that "(T)o show willful noncompliance with the FCRA, (the consumer) must show that (the credit agency) '**knowingly and intentionally committed an act in conscious disregard for the rights of others,' but need not show 'malice or evil motive.**'" *Cushman*, 115 F.3d 220, 226 (3d Cir. 1997) (citing *Philbin*, 101 F.3d at 970). In *Cushman*, the Third Circuit held that only defendants who have engaged in actions "on the same order as willful concealment or misrepresentations" have committed a willful violation for FCRA purposes, and are subject to punitive damages under 1681n. *Cushman*, 115 F.3d at 227. To justify an award of punitive damages, O'Connor must prove that Trans Union adopted its reinvestigation policy either knowing that policy to be in contravention of the rights possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy contravened those rights." *James J. O'Connor v. Trans Union Corp.*, Civil Action No. 97-4633 (U.S.D.C. E.D. Pa. 9/28/99). Reckless disregard connotes that the speaker entertained actual doubt about the truth of the statement. *Wiggins v. Equifax Services. Inc.*, 848 F. Supp. 213, 223 (D.D.C. 1993).

Page -9-

Plaintiff must merely show direct or circumstantial evidence of willful misconduct or actions which is clearly evident in the original **as well as the most recent actions of the Defendant U.S. Bank**..  Plaintiff need not produce a "smoking gun" or any other form of definitive proof of the defendant's intent or conscience. *Whitesides, supra*; *Cushman v. Trans Union Corp.*, 920 F. Supp. 80, 84 (U.S.D.C. E.D Pa. 1996). The trier of fact may deduce it from the surrounding circumstances. *Id.* In *Cushman*, the court found it adequate that plaintiff "had twice informed the consumer reporting agency of inaccuracies within her credit report; however, the consumer reporting agency failed to take action." The court concluded that a jury could reasonably conclude that the defendant's conduct was willful. *Id.* In *Whitesides*, like here in Jensen, plaintiff repeatedly informed the credit reporting agency of the problem and errors, "but the errors continued to appear, years after originally notifying Cavalry." *Supra*, at p.9, slip op.

## 1681H(E) DOES NOT REQUIRE PLAINTIFF TO SHOW MALICE OR WILLFUL INTENT TO INJURE

It is anticipated that US Bank, as always, will try to mislead the court and argue that state law claims are not allowed absent a showing of malice or willful intent to injure. Most recently in *Whitesides v. Equifax, et al*, cause no. 99CV0210-S, —F. Supp. —— (U.S.D.C. W.D. La. 12/4/00), and—F. Supp. —— (U.S.D.C. W.D. La. 12/4/00) (two published orders on the same day), United States District Judge Don Walter rejected Cavalry's argument, as well as Bank of Louisiana's argument, and ruled that there is *no qualified immunity* for any data transmission (or consumer credit report transmissions) *other than those from the consumer reporting agency to the consumer*.

That is the plain and clear reading of 1681h(e). Judge Walter relied, in part, upon the *Yeager v. TRW*, 984 F. Supp. 517 (U.S.D.C. E.D.Tex. 1997), decision by this Honorable Court.

In addition to *Yeager* and other cases, the correct interpretation of 1681h(e) actually began with the *Baxter v. Reliable Oldsmobile, Inc.*, 1986 Westlaw 13584 (Ohio App. Nov. 26, 1986) (Dissent), court which stated that with regard to 1681h(e): "The foregoing provision does

not bar a common-law proceeding for defamation, but does impose the additional requirement of malice or willful intent to injure, *under specified circumstances*. This additional requirement is *only applicable* to actions based on information disclosed *pursuant to 15 U.S.C. 1681g, 1681h, or 1681m. But in the case at bar, there is no evidence that the disputed information was disclosed pursuant to those specific sections. See Retail Credit Co. v. Russell,* (1975), 234 Ga. 765, at 767, which held: "As an initial matter, we note that the FCRA, 15 USCA s 1681-1681t (Supp.1971), effective April 25, 1971 (Act of October 26, 1970, s 602, 84 Stat. 1136), is not applicable to this suit. That Act provides a conditional privilege in some circumstances to agencies such as Retail Credit *who furnish information concerning an individual directly to that individual upon his request*. However, in situations such as that presented here, concerning *information disseminated to subscribers of the company, the Act's conditional privilege does not apply and state libel law controls. See generally*, The Fair Credit Reporting Act: Are Business Credit Reports Regulated? 1971 Duke L.J. 1229; Annot., Construction and Application of F.C.R.A., 17 ALR Fed. 675 (1973)." (Emphasis added.) *See also*, Maurer, Common Law Defamation and the Fair Credit Reporting Act (1983), 72 Geo.L.J. 95, 102, fn. 42 ("The limitation of state law liability contained in section 1681h(e) *applies only if the consumer report is furnished pursuant to the disclosure provision of the FCRA*.") There is nothing in the record to indicate the applicability of the FCRA limitation on liability to the appellants' claim against Beneficial. Therefore, summary judgment was improperly granted below." In *McAnly v. Middleton and Reutlinger, PSC*, 77 F. Supp. 2d 810, 814 (U.S.D.C. W.D. Ky. 1999), the District Court reached the same conclusion, stating: "In fact, section 1681h(e) is *not actually a preemption provision*. Rather, it is a quid pro quo *grant of protection for statutorily required disclosures*.

Since various parts of the federal statute require consumer reporting agencies and information users to disclose information to consumers *under certain circumstances*, this section guarantees that the agencies or users cannot be sued *for those required disclosures* under state tort law."

In *Retail Credit Co. v. Russell*, 234 Ga. 765, 218 S.E.2d 54 (Ga. 1975),the court held that the conditional privilege (1681h(e)) of the FCRA was not applicable to information disseminated *to the agency's subscribers* and that the credit reporting agency was not protected by a conditional privilege under state law. The FCRA provides a conditional privilege in some circumstances to agencies such as Retail Credit who furnish information concerning an individual directly *to that individual upon his request*. However, in situations such as that presented here, concerning information *disseminated to subscribers of the company*, the Act's conditional privilege *does not apply and state libel law controls*. See generally, the Fair Credit Reporting Act: Are Business Credit Reports Regulated? 1971 Duke L.J. 1229; Annot., Construction and Application of FCRA, 17 A.L.R.Fed. 675 (1973).

It makes sense that Congress did not intend for consumer to sue credit reporting agencies for disclosures to the consumer, unless the agency maliciously or with willful intent to injure the consumer, *sent an error-ridden report directly to the consumer*. A complete review of 1681h(e) discloses the deficient interpretation repeatedly argued by the credit reporting agencies.

## BURDEN OF PROOF: 1681E(B)

Plaintiff's burden under 1681e(b): (1) the consumer reporting agency was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury. *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (Cal.); *Henson v. CSC*, 29 F.3d 280, 284 (7th Cir. 1994); *James J. O'Connor v. Trans Union Corp.*, Civil Action No. 97-4633 (U.S.D.C. E.D. Pa. 9/28/99); *Houston v. TRW Info. Services, Inc.*, No. 88-CIV-0186, 1989 Westlaw 59850 (S.D.N.Y. 5/2/89).

## PUNITIVE DAMAGES: BURDEN OF PROOF

Punitive damages may be awarded for willful violation of any provision of the FCRA and malice, intent, scienter, or evil motive need not be proven. *Thornton v. Equifax, Inc.*, 619 F.2d

700 (8th Cir. 1980); *Fischl v. GMAC*, 708 F.2d 143 (5th Cir. 1983); *Pinner v. Schmidt*, 805 F.2d

1258 (5th Cir. 1986)(La.); *Boothe v. TRW Credit Data*, 768 F. Supp. 434 (U.S.D.C. S.D. N.Y.

1991); *Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (U.S.D.C. M.D.

Fla. 1985); *Jones v. Credit Bureau of Huntington, Inc.*, 399 S.E.2d 694 (W.Va. 1990); *Nitti v.

Credit Bureau of Rochester, Inc.*, 84 Misc.2d 277, 375 N.Y.S.2d 817; *Trans Union Corporation

v. Crisp*, 896 S.W.2d 446 (Ark. App. 1995). A reckless indifference to plaintiff's rights under

the Fair Credit Reporting Act ("FCRA") will justify an award of punitive damages. *Collins v.

Retail Credit Co.*, 410 F. Supp. 925 (U.S.D.C. E.D. Mich. 1987).


## CONCLUSION


This case is not about whether or not the Plaintiff had an account or not, it is about what

the Defendant did or did not do when challenged pursuant to the FCRA and whether it reported

information accurately to the CRA's as required under the FCRA.  Defendant on its own volition

by failing yet a second time (amended Declaration of Stephanie Buckley) to redact or truncate

sensitive bank account numbers in compliance  with the mandates of the FCRA, FRCP , Social

Security Act, .


Plaintiff respectfully asserts that US Bank has violated the FCRA mandates under

1681(n) and (o) by repeatedly issuing information about plaintiff which contained sensitive

account information into the Court records that could easily lead identity theft. This most recent

failure to redact and or truncate sensitive information, even though labeled "filed under seal"

again just proves without a doubt that the Defendant clearly does not have the systems in place to

prevent errors as required under the Act. In addition their Wilful and Negligent acts also violate

other  professional and ethical standards of their professions.


For the record and in the interest of justice, A single violation is sufficient to support

judgment for the consumer. Cacace v.Lucas, 775 F.Supp. 502, 505 (D.Conn. 1990); Supan v.

Medical Bureau of Economics, Inc., 785 F.Supp. 304, 305 (D.Conn. 1991).

Based on the foregoing, Plaintiff, Lawrence James Saccato respectfully submits that he has established more than sufficient legal grounds to Defendant US Bank's action(s), and therefore, Plaintiff's motion for summary judgment should be granted.

Respectfully submitted this 17th day of November, 2011.

*Lawrence Saccato*

Lawrence James Saccato pro se'
C/o 6387 Old Hwy 99 S
Roseburg Oregon 97470
541-784-2284 mess.
ljsaccato@gmail.com