UNITED STATES DISTRICT COURT
FOR OREGON
EUGENE DIVISION

HONORABLE JUDGE MICHAEL R. HOGAN

| | |
|---|---|
| Lawrence James Saccato<br>    Plaintiff ProSe' | § |
| | § |
| | §   Case No:10-CV-06244-HO |
| Vs. | § |
| | §   PLAINTIFF'S SEPARATE |
| | §   STATEMENT OF UNDISPUTED |
| U.S. Bank National Association N.D. | §   MATERIAL FACTS IN SUPPORT |
| | §   OF MOTION FOR SUMMARY |
| Co-Defendant | §   JUDGMENT |
| | § |

## PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff, Lawrence James Saccato respectfully submits the following Statement of Undisputed Material Facts in support of his motion for summary judgment, pursuant to FRCP Rule 56 (c)(1)(A):

## Moving Party's Undisputed Material Facts and Supporting Evidence:

1.    Plaintiff is a Consumer protected by the law under the Fair Credit Reporting Act 15 USC § 1681, et seq.

2.    Defendant is a Credit Lender and as such governed under the law by The Fair Credit Reporting Act 15 USC § 1681, et seq.

Page -1-

3.      Plaintiff received a copy of his credit reports on or about June, 2009 and April, 2010 and discovered that Defendant has been reporting erroneous and inaccurate information ro the Credit Reporting Agencies .

4.      Plaintiff disputed the accuracy of the information to Equifax, Experian and Transunion on at least 2 occasions.

5.      Plaintiff also disputed directly to the Defendant US Bank on or about June 15, 2009 and on or about April 15, 2010.

6.      The Defendant failed to complete the proper investigation or reinvestigation as required when contacted by the credit reporting agencies.

7.      The Defendant failed to notify the Credit Reporting Agencies that the account was being disputed and failed to mark the account(s) in dispute.

8..     The Defendant failed to provide a letter to the Customer within the 30 day period as required under the E-Oscar procedure guidelines as well as the requirements under the FCRA.

9.      The Defendant provided erroneous and inaccurate information to the Credit reporting agencies for a period of time covered by the statute of limitations of the FCRA (two years).

10.    The Defendant provided an sworn affidavit of claim and certification of amount due that is erroneous on its and conflicts with other documents from its official records and adds yet another violation which may elevate to fraud upon the consumer.

11.    The Defendants own Non Monetary History Inquiry displays no record of any investigation or re-investigate being conducted in 2009 or 2010.

12.    Defendant continues to violate Plaintiff's civil rights under the Fair Credit Reporting Act as outlined in the original Complaint and now has added further damage to Plaintiff by obtaining Plaintiff's credit report with false pretenses and during litigation.

13.    Defendant also violated  the FCRA 15 U.S.C. § 1681(g) by placing an underacted document with the Social Security Number assigned to the Plaintiff in the Public Record (See Case 6:10-cv-06244-HO Document 49 Filed 11/07/11 Page 4 of 24 Page ID#: 199)

14.    Plaintiff also violated the Local Rules of the Court by filing a document without redacting the Social Security Number assigned to the Plaintiff. Besides being irresponsible it is unethical and should warrant further damage claims.

Respectfully submitted this 30th day of November, 2011.

*Lawrence Saccato*

Lawrence James Saccato pro se'
C/o 6387 Old Hwy 99 S
Roseburg Oregon 97470
541-784-2284 mess.
ljsaccato@gmail.com

# THE FOLLOWING DOCUMENT CONFIDENTIAL AND IS SUBJECT TO A PROTECTIVE ORDER

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

*Exhibit*
*PE MSS 061*

## PROCEDURES FOR RESEARCHING CREDIT BUREAU DISPUTES
Revolving Line of Credit and Credit Card Accounts

Purpose: To research and respond to customer's credit bureau disputes received via mailed correspondence, ACDV's (On-Line Disputes), Customer Dispute Verification (yellow forms sent by mail from the credit bureaus), faxes, telephone calls or by emails.

Regardless of the type of dispute that is received, the following is the basic steps to complete the research:

1. When a dispute is received, any identifying information that is listed within the dispute is used to look up the customer in the U.S. BANK systems or in the other public record systems (Lexis Nexis or FastData) that we have access too. Demographic information is verified to ensure the correct customer has been located, and then it is determined which account's history is being disputed - open date, balance amount, credit limit, delinquencies' etc.
2. The disputed information is then compared to the actual account history. The system information is reviewed, the notes are read, along with verifying if any other disputes have been submitted on the account in the past.
3. An update will be performed if the disputed item is actually being reported incorrectly or there was a bank error. i.e., A payment was recently made and the customer is requesting the balance amount that is being reported be updated; a misposted payment by U.S. Bank has caused a delinquency mark; the credit limit needs to be corrected due to an increase, etc.
4. If an update will be performed, the update is processed via the AUD process or via an ACDV response within E-Oscar.
5. Within 30 days of the receipt of a written dispute, regardless if there will be an update completed or the dispute is rejected, a letter is mailed or faxed to the customer explaining the outcome of the research. A letter will also be sent stating more information is required if an account cannot be located. An ACDV or an AUD response is completed on-line via E-Oscar within the 30 day FCRA requirement.
6. All documentation used in the research of the written disputes and copies of the responses are kept by U.S. Bank for 2 years on site and for 6 years off site.
7. The ACDV (E-Oscar on-line disputes) documentation is downloaded from the E-Oscar web site monthly.

\*\* Any dispute concerning an Inquiry that was made by U.S. Bank, Elan Financial, Toyota, Lexis or PNC Bank is handled in Underwriting, New Accounts Departments or Fraud. These items are faxed, sent inner office or emailed to the appropriate Department.

If the consumer gives a partial account number or if there is no account number listed, there are several methods to search for an account number. All methods of researching should be performed in order to be certain that every effort has been made to locate an account.

1

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 43

1          Q.     They would?

2          A.     Yes.

3          Q.     And the process for the associate if they

4     received a written dispute and it came in, would they make

5     a note in this screen?  Would this be the appropriate area

6     that one of your associates would make note of receiving or

7     U.S. Bank receiving a dispute on this account?

8          A.     If the account is not charged off, yes.

9          Q.     Okay.  So prior to the charge off -- prior to

10    the charge-off date, if a dispute was received, there

11    should be a notation made in this screen or one of these

12    screens, correct?

13         A.     Yes.  When they respond to it, they would make

14    a note.

15         Q.     And can you identify where there was a dispute

16    received in these notations?

17         A.     On 007, I do not see one.

18         Q.     Okay.  Would that only be whether a dispute

19    came from the consumer or would it be if a dispute came

20    from the CRAs as well?

21         A.     It would be either.

22         Q.     Both.  So if E-OSCAR downloaded to U.S. Bank,

23    U.S. Bank software or -- I'm sorry -- would U.S. Bank

24    software automatically pick that up or would one of the

25    associates have to input that into the account?

USB/SACC 001323

| )V Control Number | Originator ( | Originator | Data Furni | Queue Nar | Firstier FB: | Dispute Cc | Response | Date Sent | Date Resp | Response | Consumer | Consumer Middle Nar | Last Name | Account Number |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| I90111039776089 | 9999 EFX | US Bank | Firstier FB: | 1 | | 3 | 4/21/2010 | 4/23/2010 | 5/14/2010 | 97443 | LAWRENC | JAMES | SACCATO | 419004034 |
| I90111039776090 | 9999 EFX | US Bank | Firstier FB: | 1 | | 3 | 4/21/2010 | 4/23/2010 | 5/14/2010 | 97443 | LAWRENC | JAMES | SACCATO | 4190040 |
| I90111039776088 | 9999 EFX | US Bank | Firstier FB: | 1 | | 3 | 4/21/2010 | 4/23/2010 | 5/14/2010 | 97443 | LAWRENC | JAMES | SACCATO | 41900808 |
| I90111039776087 | 9999 EFX | US Bank | Firstier FB: | 1 | | 1 | 4/21/2010 | 4/23/2010 | 5/14/2010 | 97443 | LAWRENC | JAMES | SACCATO | 48334920 |
| 21454100304001N | 103 TUN | US Bank | Firstier FB: | 1 | | 1 | 4/23/2010 | 4/23/2010 | 5/16/2010 | 97443 | LAWRENC | JAMES | SACCATO | 48334920 |
| 21454100305001N | 103 TUN | US Bank | Firstier FB: | 1 | | 3 | 4/23/2010 | 4/23/2010 | 5/16/2010 | 97443 | LAWRENC | JAMES | SACCATO | 419004033 |
| 21454100306001N | 103 TUN | US Bank | Firstier FB: | 1 | | 3 | 4/23/2010 | 4/23/2010 | 5/16/2010 | 97443 | LAWRENC | JAMES | SACCATO | 419004033 |

PE MST 003

Page: 1 Document Name: untitled

```
ONMN             00614      U.S. BANK NATIONAL ASSOCIATION ND           10/26/10
                            CARDHOLDER NON MONETARY HISTORY INQUIRY       11:06 AM

TRAN
CODE/    DATE    OPERATOR              DESCRIPTION/               PAGE   1 of   6
OLD DATA                              NEW DATA
---  ----------  --------             ------------------------------------------
USR  04/21/2010  CG493000             USER ENTERED MEMO
RECLAMATION PRODUCT CHANGE   CURRENT  CHANGED FROM  05881  TO  03315
USR  04/08/2010  CG493000             USER ENTERED MEMO
RECLAMATION PRODUCT CHANGE   PREVIOUS CHANGED FROM  03358  TO  03352
INT  12/01/2009  F4680AL              ALM FOR INTEREST RATE TYPE

PN1  11/23/2009  CG392216             5 DAY LATE PAYMENT

C79  11/20/2009  F4680TR              STATEMENT CYCLE CHANGE
014                                   035
S92  11/06/2009  SAGITTE              FORCE AND STAY IN COLLECTIONS

080  11/06/2009  SAGITTE              CHANGE AUXILIARY STATUS (EFTS)
W2                                    W2CD

7=PAGE UP  8=PAGE DOWN  9=0091  10=0TXT
===> ____ PF __ FIRST PAGE DISPLAYED              T34L     CGPO0NMN
```

$66$

Associate would

USB/SACC 000021

PEMSJ 005 & JS DEP 008

Page: 1 Document Name: untitled

```
ONMN  4          00614    U.S. BANK NATIONAL ASSOCIATION ND        10/26/10
                          CARDHOLDER NON MONETARY HISTORY INQUIRY   11:06 AM

TRAN
CODE/     DATE     OPERATOR              DESCRIPTION/           PAGE   2 of   6
OLD DATA                                 NEW DATA
---   ----------  --------               -------------------------------------
020   10/23/2009  DMB1805                CHANGE GENERAL INFORMATION

020   10/17/2009  LMHONER                CHANGE GENERAL INFORMATION

PN2   10/06/2009  CG392216               15 DAY LATE PAYMENT

PN1   09/28/2009  CG392216               5 DAY LATE PAYMENT

080   09/24/2009  JXROLAN                CHANGE AUXILIARY STATUS (EFTS)
                                          W2
065   08/26/2009                         STATUS PERMANENT RESTRAINT
3                                         5
PN1   08/24/2009  CG392216               5 DAY LATE PAYMENT


7=PAGE UP  8=PAGE DOWN  9=0091  10=0TXT
===> ____ PF __ TRANSACTION CONTINUES                T34L    CGPO0NMN
```

USB/SACC 000022

Date: 10/26/2010 Time: 11:06:49 AM

Page 9

1              MR. KAYSER:  She needs to answer.  I'm not

2    directing her not to answer.  I'm just objecting to the

3    form of the question because it's vague and confusing to

4    me.  To the extent Stephanie understands it and can address

5    it, she's free to answer it.

6         Q.   (By Mr. Saccato)  Maybe I'll rephrase it.

7              Does U.S. Bank under your department handle

8    reinvestigations in a different manner than they do just a

9    normal investigation, written or telephonic?

10             MR. KAYSER:  There you go.

11        A.   No.  It would be the same process.

12        Q.   (By Mr. Saccato)  And under the same time

13   frame?

14        A.   Yes.

15        Q.   Okay.  Thank you.

16             Do you know how many employees you have under

17   your supervision that handle the consumer disputes for

18   credit lines?

19        A.   Ten.

20        Q.   Ten.  Okay.  All right.  Very well.

21             And do you know roughly how many disputes are

22   handled by that department on a daily basis?

23        A.   On a daily basis.  Somewhere under 200.

24        Q.   Okay.  And how many of those, Stephanie, would

25   be written, as opposed to telephonic?

Page 13

1    or Mr. Kayser chose not to supply them to me.

2              But are these E-OSCAR procedures implemented

3    into the U.S. Bank policy and procedure manual?

4              MR. KAYSER:  I'm going to object to the form

5    of the question.  It assumes that there is such a thing as

6    the U.S. Bank policy and procedure manual.

7         Q.   (By Mr. Saccato)  I'll withdraw the question.

8              Stephanie, does U.S. Bank have a policy and

9    procedure manual --

10        A.   No.

11        Q.   -- for the operation?

12        A.   No.  The procedures that we use are the ones

13   outlined in this Deposition 002 document, procedures for

14   research and credit bureau disputes.

15        Q.   Correct.

16        A.   As well as the E-OSCAR manuals.

17        Q.   Okay.  But does U.S. Bank have a policy and

18   procedure manual for its operation?

19        A.   No.

20        Q.   No?  I'm sorry?

21        A.   No.

22        Q.   Okay.  Let's go back to deposition Exhibit

23   No. 2.  And No. 3, could you please take just a moment and

24   read No. 3 and then explain to me what this means to your

25   department.

1          Q.    Okay.  This report is created by E-OSCAR,

2    correct?

3          A.    Correct.

4          Q.    And you're saying based upon this document

5    we're looking at, that it was -- this was generated by

6    Equifax and that's why they don't have whether it was sent

7    or not sent to them under the heading EFX?

8          A.    Correct.  Because it would have been responded

9    to them because they were the originator.

10         Q.    Okay.  So they originated the dispute and you

11   received it through E-OSCAR via this report, correct?

12         A.    Correct.  Well, not via this report.  Via the

13   dispute process.  This report is the result of the dispute

14   process.

15         Q.    Okay.  How were you notified by Equifax that

16   there was a dispute?

17         A.    They come into our work queue.

18         Q.    Could you repeat that?

19         A.    Sure.  It's an electronic process and they

20   come into our work queue.

21         Q.    And does it come directly from Equifax?

22         A.    I don't know all of the computer workings

23   behind E-OSCAR.  But, yes.

24         Q.    So it's like the direct access terminal?

25         A.    I don't know what you mean by direct access

1   at a queue, you've got a screen, so one of your staff
2   members has X amount of disputes, then what transpires
3   after they open your queue and review these -- these
4   disputes?
5        A.   They'll have the dispute up on the E-OSCAR
6   screen, then they'll have to locate the account on U.S.
7   Bank's system and do a comparison of data between the two
8   systems.  And then they should make a notation on the
9   account.
10       Q.   Okay.  And, again, you're saying the records
11  show all the way back to 2007, there's no notation of a
12  dispute on this particular account that we're looking at,
13  correct?
14       A.   You want me to go through the 007, 008, 009;
15  is that what you're asking me to do?
16       Q.   Yes, I am.
17       A.   All the way through to -- I guess 009 is
18  the -- 010 is the last one, 010.  No, I do not see any
19  record of dispute on those.
20            (Exhibit Nos. 8, 9 and 10 were introduced for
21  identification.)
22       Q.   (By Mr. Saccato)  Okay.  So there's a
23  possibility then that whoever was reviewing what was
24  downloaded into the queue didn't transfer the information
25  from the queue into this -- into your database, correct?

1   could access it at a time.

2           A.   No, no.  I said any number could access it at

3   one time.  Then what the associate does as they're working

4   through the queue and they respond, they would notate the

5   ACDV control number into the notes.

6           Q.   Okay.  And am I correct on this -- on the one

7   that we were just reviewing, DEP 007, Exhibit 7, you

8   reviewed that and you went back from '07 through '10, and

9   there's no notation of a dispute in the notes; is that

10  correct?

11          A.   Correct.

12          Q.   So if E-OSCAR had downloaded it into U.S.

13  Bank's queue, then someone had to take it from U.S. Bank's

14  queue and transfer it to this -- to these notations for

15  this account, correct?

16          A.   Our procedure would be, yes, to note the

17  control number of the response within the account.

18          Q.   Correct.  And we have not been able thus far

19  to identify the control number in this account, Exhibit

20  007, correct?

21          A.   Correct.

22          Q.   Okay.  And so what is the procedure that's in

23  place if one is missed, is my question?

24          A.   If one is missed and we locate it through our

25  quality review --

Stephanie Buckley                                        November 2, 2011

Page 67

1    generally speaking, we look at the information provided in

2    E-OSCAR, in the consumer's dispute, and compare it to our

3    system records.

4              Q.    Okay.  And if -- is there just -- how many

5    items have to compare to your system records before you

6    investigate deeper into the matter?

7              A.    It depends on the type of dispute it is.  So

8    if --

9              Q.    If -- Go ahead.  I'm sorry.

10             A.    If the person is just saying I want my balance

11   updated and we can see this is the right account number,

12   it's the right name, and right social and the balance is

13   off by a payment, we'll just update it.

14             Q.    In general, how many identifying factors are

15   there for it to just be a general dispute?

16             A.    I don't think there's a general rule for that.

17   It depends on the nature of the dispute.

18             Q.    And what in U.S. Bank's position would trigger

19   the requirement to send notification directly to the

20   consumer, as opposed to the CRAs?

21             A.    We send notification directly to the consumer

22   when the communication that we received is directly from

23   the consumer.

24             Q.    Okay.  That's fair.

25                   Now if we could go please to Deposition

1    Where is it redacted?

2              MR. KAYSER:  I have no idea.  I mean there's

3    half the page I don't see.  Whether it's been redacted or

4    not, I can't tell.

5              MR. SACCATO:  Well, I can tell you it's not

6    redacted.  All I'm asking her to identify is the very first

7    entry on the page.

8              MR. KAYSER:  The very first entry on Page 10

9    of a 14-page document?

10             MR. SACCATO:  Yes.  Page 10 of 14 pages.  All

11   right.  Let me rephrase the question.

12        Q.   (By Mr. Saccato)  Are you aware -- Stephanie,

13   are you aware that U.S. Bank pulled a -- or accessed a

14   consumer credit report on February 1 of 2011?

15             MR. KAYSER:  For you or for anyone?

16             MR. SACCATO:  For me.

17        A.   This document would indicate that there was a

18   preliminary review of a credit report, not a full credit

19   bureau report pull.

20        Q.   (By Mr. Saccato)  Okay.  And how would you be

21   able to tell that, Stephanie?

22        A.   Just by the inquiry itself.

23        Q.   Okay.

24        A.   But this is a Transunion or whoever document.

25   It's one of the credit bureau's document.  And they would

 1    this, she went through all that before signing it.

 2                THE WITNESS:  Oh, absolutely.

 3          Q.   (By Mr. Saccato)  Okay.  And then let's see.

 4    I'm just -- we're almost there.  I'm just flipping through

 5    a couple more.  You already explained that.

 6                Okay.  Could you please -- Stephanie, could

 7    you please explain your policies and procedures that you

 8    have in effect to comply with 15 U.S.C. 1681, which is the

 9    Fair Credit Reporting Act?  In your training, I'm sure you

10    train the supervisors and associates, you know, the proper

11    procedures in complying with the act.  You don't have

12    written policies.  So I think it's fair that I just ask you

13    basically what provisions you have in place to ensure

14    compliance with the act.

15                MR. KAYSER:  I'm going to object to the

16    suggestion that there isn't written policies.  We just

17    talked about one earlier today.

18                MR. SACCATO:  That's only on the E-OSCAR.  She

19    already testified that they don't have policies in place

20    for the rest of the bank and they're totally operating

21    under the E-OSCAR policy.  So how can you object when she's

22    already said they don't have a policy in place?  It's

23    passed down --

24                MR. KAYSER:  I think we may be splitting hairs

25    here, but Deposition Exhibit No. 2 is the procedures for

```
 1          Q.    Had you gotten a direct dispute from the
 2   consumer, it would have went through the same channels as
 3   we previously discussed.  It would go to -- the associate
 4   would get it, they'd do an investigation, and they would
 5   have reported it through the E-OSCAR system, correct.
 6          A.    If we were able to locate an account, correct?
 7          Q.    Okay.  And -- Okay.  And you said you don't
 8   have any data file maintenance other than the E-OSCAR one.
 9   So that's pretty much taken care of.
10               THE WITNESS:  And I'm sorry.  I'm going to
11   have day care concerns in about two minutes.  I apologize.
12               MR. SACCATO:  I'm sorry?
13               THE WITNESS:  I'm going to have day care
14   concerns.
15               MR. KAYSER:  If we can wrap this up.
16               MR. SACCATO:  I'm trying to, Chris.  We only
17   have three more pages.  I'll go as quickly as I can.
18          Q.    (By Mr. Saccato)  Again, you're saying -- I
19   just really want to be clear.  There's no other procedure
20   or policy manual other than the E-OSCAR manual that U.S.
21   Bank uses as of this date?
22          A.    That is just in my department, no.  That I'm
23   aware of, no.
24          Q.    Okay.  And to the best of your knowledge, you
25   produced all the documentation regarding any of my credit
```

1    identifiers or my name that's in U.S. Bank's possession,
2    correct?
3              A.    I believe all documents that have been
4    requested have been furnished, yes.
5              MR. KAYSER:  Well, Stephanie, you're not
6    necessarily familiar with that.  I would say, Larry,
7    anything that's related to you specifically, we have done a
8    reasonable search and produced the responsive documents
9    that we were able to locate.
10             MR. SACCATO:  Okay.  All right.  Well, I think
11   that's it.  But should you come up with another document,
12   I'd just like to reserve the right that I may have to talk
13   to Stephanie again.  But other than that, I think we pretty
14   much went through everything.  How many seconds do I have
15   left?
16             MR. KAYSER:  You're right on target.
17             MR. SACCATO:  I want to thank you both for
18   being patient.  I just want to get everything across.  And
19   I thank you both your patience.
20             THE COURT REPORTER:  Signature?
21             MR. KAYSER:  She'd like to -- I think I'll
22   have Stephanie look at her deposition before we finalize
23   it.
24             THE COURT REPORTER:  Who gets the original?
25             MR. KAYSER:  That would be Mr. Saccato.

PEMSS 016



**Civil Party Search**
Sat Nov 26 19:19:22 2011
109 records found


**Client:**
**Search:** Civil Party Search Name u.s. bank NOS 440 All Courts Page: 1

| Party Name ▼ | Court | Case | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|
| 1 U.S. Bank (dft) | caedce | 1:2008-cv-00207 | 440 | 02/11/2008 | 03/25/2008 |
| 2 U.S. Bank (dft) | candce | 3:2001-cv-04444 | 440 | 11/26/2001 | 05/14/2002 |
| 3 U.S. Bank (dft) | candce | 3:2001-cv-04443 | 440 | 11/26/2001 | 05/14/2002 |
| 4 U.S. Bank (dft) | candce | 3:2001-cv-04442 | 440 | 11/26/2001 | 05/14/2002 |
| 5 U.S. Bank (dft) | candce | 3:2001-cv-04440 | 440 | 11/26/2001 | 05/14/2002 |
| 6 U.S. Bank (dft) | candce | 3:2004-cv-00897 | 440 | 03/05/2004 | 03/11/2004 |
| 7 U.S. Bank (dft) | nedce | 8:2010-cv-00186 | 440 | 05/11/2010 | 06/07/2010 |
| 8 U.S. Bank (dft) | iasdce | 4:2004-cv-70019 | 440 | 01/09/2004 | 02/05/2004 |
| 9 U.S. Bank (dft) | mndce | 0:2003-cv-05168 | 440 | 09/05/2003 | 03/03/2004 |
| 10 U.S. Bank (dft) | mndce | 0:2005-cv-02640 | 440 | 11/15/2005 | 07/10/2006 |
| 11 U.S. Bank (cc) | tnmdce | 3:2002-cv-00681 | 440 | 07/19/2002 | 05/27/2005 |
| 12 U.S. Bank (dft) | tnmdce | 3:2002-cv-00681 | 440 | 07/19/2002 | 05/27/2005 |
| 13 U.S. Bank (dft) | tnmdce | 3:2003-cv-00952 | 440 | 10/15/2003 | 06/13/2005 |
| 14 U.S. Bank Home Mortgage (crd) | nyedce | 2:2003-cv-05039 | 440 | 10/03/2003 | 02/17/2009 |
| 15 U.S. Bank (dft) | arwdce | 2:2009-cv-02063 | 440 | 06/04/2009 | 03/30/2010 |
| 16 U.S. Bank (dft) | cacdce | 2:2009-cv-03864 | 440 | 05/29/2009 | 07/31/2009 |
| 17 U.S. Bank (dft) | ilndce | 1:2001-cv-00020 | 440 | 12/29/2000 | 01/08/2001 |
| 18 U.S. Bank (dft) | kywdce | 1:2005-cv-00049 | 440 | 04/20/2005 | 03/22/2006 |
| 19 U.S. Bank (dft) | kywdce | 3:2006-cv-00192 | 440 | 04/11/2006 | 12/07/2007 |
| 20 U.S. Bank (dft) | ohndce | 1:2011-cv-02205 | 440 | 10/17/2011 | |
| 21 U.S. Bank N.A. (pla) | tnedce | 3:2011-cv-00039 | 440 | 01/24/2011 | |
| 22 U.S. Bank (dft) | ordce | 3:2009-cv-00752 | 440 | 07/01/2009 | 07/15/2011 |
| 23 U.S. BANK ASSOCIATION (dft) | njdce | 3:2011-cv-03127 | 440 | 05/25/2011 | 11/14/2011 |
| 24 U.S. Bank Attorneys (dft) | kywdce | 3:2007-cv-00704 | 440 | 12/19/2007 | 04/29/2008 |
| 25 U.S. Bank Bancorp Corporation (dft) | kywdce | 1:2011-cv-00015 | 440 | 01/28/2011 | 03/04/2011 |
| 26 U.S. Bank Bancorp Corporation (dft) | kywdce | 1:2011-cv-00117 | 440 | 07/27/2011 | 09/13/2011 |
| 27 U.S. Bank Bancorp Corporation (dft) | kywdce | 1:2011-cv-00178 | 440 | 11/18/2011 | |
| 28 U.S. Bank National Association (pla) | cacdce | 8:2011-cv-00216 | 440 | 02/07/2011 | 02/15/2011 |
| 29 U.S. Bank National Association (pla) | cacdce | 2:2011-cv-06384 | 440 | 08/03/2011 | 08/15/2011 |
| 30 U.S. Bank National Association (pla) | casdce | 3:2010-cv-01894 | 440 | 09/10/2010 | 09/15/2010 |
| 31 U.S. Bank National Association (pla) | casdce | 3:2010-cv-02128 | 440 | 10/13/2010 | 11/29/2010 |
| 32 U.S. Bank National Association (dft) | codce | 1:2001-cv-00226 | 440 | 02/07/2001 | 06/28/2001 |
| 33 U.S. Bank National Association (dft) | codce | 1:1996-cv-02985 | 440 | 12/27/1996 | 07/12/1999 |
| 34 U.S. Bank National Association (pla) | codce | 1:2008-cv-00770 | 440 | 04/16/2008 | 08/11/2008 |
| 35 U.S. Bank National Association (dft) | flmdce | 6:2009-cv-01888 | 440 | 11/04/2009 | 01/06/2010 |
| 36 U.S. Bank Home Mortgage (dft) | nyedce | 2:2003-cv-05039 | 440 | 10/03/2003 | 02/17/2009 |
| 37 U.S. Bank NA (dft) | azdce | 2:2009-cv-00215 | 440 | 02/04/2009 | 06/23/2010 |
| 38 U.S. Bank National Association (pla) | candce | 3:2010-cv-00484 | 440 | 02/02/2010 | 02/11/2010 |
| 39 U.S. Bank National Association (res) | codce | 1:2003-cv-01328 | 440 | 07/23/2003 | 07/27/2004 |
| 40 U.S. Bank National Association (dft) | flsdce | 9:2009-cv-81255 | 440 | 08/28/2009 | 04/13/2010 |
| 41 U.S. Bank National Association (dft) | nyedce | 1:2010-cv-01937 | 440 | 04/29/2010 | 04/26/2011 |
| 42 U.S. Bank National Association (dft) | ordce | 3:2011-cv-00989 | 440 | 08/16/2011 | 09/15/2011 |
| 43 U.S. Bank National Assoc. (dft) | codce | 1:2007-cv-01244 | 440 | 06/14/2007 | 10/11/2007 |
| 44 U.S. Bank National Association (pla) | candce | 3:2011-cv-04111 | 440 | 08/22/2011 | 10/20/2011 |
| 45 U.S. Bank National Association (pla) | gandce | 1:2008-cv-00900 | 440 | 03/11/2008 | 03/24/2008 |
| 46 U.S. Bank National Association (dft) | iddce | 1:2010-cv-00591 | 440 | 12/01/2010 | |
| 47 U.S. Bank National Association (dft) | mndce | 0:2008-cv-06060 | 440 | 11/17/2008 | 09/23/2009 |
| 48 U.S. Bank National Association (dft) | mndce | 0:2010-cv-04734 | 440 | 11/24/2010 | 05/17/2011 |
| 49 U.S. Bank National Association (dft) | ordce | 3:2009-cv-00752 | 440 | 07/01/2009 | 07/15/2011 |
| 50 U.S. Bank National Association (dft) | ilndce | 1:2010-cv-00573 | 440 | 01/27/2010 | 01/25/2011 |
| 51 U.S. Bank National Association (dft) | ilndce | 1:2010-cv-05147 | 440 | 08/16/2010 | |
| 52 U.S. Bank National Association (dft) | ilndce | 3:2011-cv-50240 | 440 | 08/23/2011 | 08/25/2011 |
| 53 U.S. Bank National Association (dft) | iaedce | 2:2009-cv-07384 | 440 | 11/23/2009 | 12/16/2010 |
| 54 U.S. Bank National Association (dft) | iaedce | 2:2009-cv-07383 | 440 | 11/25/2009 | 12/16/2010 |

Receipt 11/26/2011 19:19:22 82176177

**Client**
**Description** Civil Party Search
Name u.s. bank NOS 440 All Courts Page: 1

You have previously been billed for this page.
**Pages** 1 ($0.00)



**PACER** Case Locator

**Civil Party Search**
Sat Nov 26 19:19:22 2011
109 records found

User:
Client:
Search: Civil Party Search Name u.s. bank NOS 440 All Courts Page: 2

| Party Name ▼ | Court | Case | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|
| 55 U.S. Bank National Association (dft) | wawdce | 3:2007-cv-05589 | 440 | 10/24/2007 | 12/27/2007 |
| 56 U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE (dft) | paedce | 2:2010-cv-00298 | 440 | 01/22/2010 | 03/03/2010 |
| 57 U.S. Bank National Association N.D. (dft) | ordce | 6:2010-cv-06244 | 440 | 08/11/2010 | |
| 58 U.S. BANK NATIONAL ASSOCIATION ND (dft) | njdce | 2:2006-cv-01912 | 440 | 04/24/2006 | 12/04/2006 |
| 59 U.S. Bank National Association, as Trustee (pla) | mndce | 1:2010-cv-00450 | 440 | 05/10/2010 | 12/16/2010 |
| 60 U.S. Bank, N.A. (pla) | candce | 5:2010-cv-00521 | 440 | 02/04/2010 | 03/03/2010 |
| 61 U.S. Bank, N.A. (dft) | ordce | 6:2003-cv-06178 | 440 | 07/16/2003 | 08/05/2004 |
| 62 U.S. Bank, N.A. (Trustee for Terwin Asset-Backed Securities, Series 2007 QHL1) (dft) | mddce | 1:2011-cv-02048 | 440 | 07/22/2011 | |
| 63 U.S. Bank, N.A. Trustee for RASC 2007EMXI Trust (dft) | mddce | 8:2011-cv-01623 | 440 | 06/10/2011 | |
| 64 U.S. BANK NATIONAL ASSOCIATION (dft) | paedce | 2:2010-cv-00298 | 440 | 01/22/2010 | 03/03/2010 |
| 65 U.S. Bank National Association, Inc. (dft) | flmdce | 3:2011-cv-01146 | 440 | 11/18/2011 | |
| 66 U.S. Bank of Couer d' Alene, ID (dft) | wawdce | 2:2006-cv-00489 | 440 | 04/06/2006 | 06/20/2006 |
| 67 U.S. Bank of Idaho, N.A. (dft) | iddce | 1:1996-cv-00455 | 440 | 10/15/1996 | 01/12/1998 |
| 68 U.S. Bank of Idaho, N.A. (dft) | iddce | 4:2000-cv-00595 | 440 | 10/11/2000 | 10/25/2000 |
| 69 U.S. Bank of Spokane, WA (dft) | wawdce | 2:2006-cv-00489 | 440 | 04/06/2006 | 06/20/2006 |
| 70 U.S. BANK, NA (dft) | ncmdce | 1:2011-cv-00670 | 440 | 08/23/2011 | |
| 71 U.S. Bank National Association ND (pla) | flmdce | 6:2010-cv-00417 | 440 | 03/18/2010 | 03/26/2010 |
| 72 U.S. Bank, N.A. (dft) | codce | 1:2009-cv-00227 | 440 | 02/04/2009 | 05/11/2009 |
| 73 U.S. Bank, N.A. (dft) | ilsdce | 3:2007-cv-00775 | 440 | 10/31/2007 | 05/09/2008 |
| 74 U.S. Bank, N.A. (dft) | mndce | 0:2009-cv-00386 | 440 | 02/18/2009 | 08/10/2009 |
| 75 U.S. BANK, SAINT PAUL MINNISOTA (dft) | paedce | 2:2003-cv-00073 | 440 | 01/07/2003 | 04/16/2003 |
| 76 U.S. Bankruptcy Clerk - Omaha (aty) | nedce | 8:2009-cv-00298 | 440 | 08/28/2009 | 04/18/2011 |
| 77 U.S. Bankruptcy Clerk - Omaha (aty) | nedce | 8:2009-cv-00299 | 440 | 08/28/2009 | 04/18/2011 |
| 78 U.S. Bankruptcy Clerk - Omaha (aty) | nedce | 8:2009-cv-00300 | 440 | 08/28/2009 | 04/18/2011 |
| 79 U.S. Bankruptcy Clerk - Omaha (aty) | nedce | 8:2009-cv-00301 | 440 | 08/28/2009 | 04/18/2011 |
| 80 U.S. BANKRUPTCY COURT (dft) | dcdce | 1:1991-cv-02281 | 440 | 09/09/1991 | 09/23/1991 |
| 81 U.S. Bankruptcy Court (dft) | flmdce | 2:2007-cv-00532 | 440 | 08/22/2007 | 09/08/2008 |
| 82 U.S. Bankruptcy Court (ip) | mddce | 1:2002-cv-02523 | 440 | 07/31/2002 | 04/28/2004 |
| 83 U.S. Bankruptcy Court (res) | mddce | 1:1996-cv-01709 | 440 | 06/01/1996 | 09/03/1996 |
| 84 U.S. Bankruptcy Court (dft) | nedce | 8:2009-cv-00298 | 440 | 08/28/2009 | 04/18/2011 |
| 85 U.S. Bankruptcy Clerk - Omaha (aty) | nedce | 8:2005-cv-00457 | 440 | 09/27/2005 | 12/02/2010 |
| 86 U.S. Bankruptcy Court (ip) | nedce | 8:2004-cv-00377 | 440 | 08/12/2004 | 05/11/2006 |
| 87 U.S. Bankruptcy Court (ip) | nedce | 8:2005-cv-00457 | 440 | 09/27/2005 | 12/02/2010 |
| 88 U.S. Bankruptcy Court (dft) | nvdce | 2:2002-cv-00534 | 440 | 04/12/2002 | 11/12/2002 |
| 89 U.S. Bankruptcy Court (dft) | vaedce | 3:1997-cv-00808 | 440 | 10/24/1997 | 06/11/1998 |
| 90 U.S. BANKRUPTCY COURT, READING, PA (dft) | paedce | 2:2009-cv-03208 | 440 | 07/13/2009 | 01/27/2010 |
| 91 U.S. Bankruptcy Judge Kennedy (dft) | tnedce | 3:2007-cv-00054 | 440 | 02/14/2007 | 04/19/2007 |
| 92 U.S. Bank (pla) | ilndce | 1:2007-cv-01075 | 440 | 02/23/2007 | 11/08/2007 |
| 93 U.S. Bank, N.A. (dft) | kywdce | 1:2007-cv-00207 | 440 | 12/21/2007 | 02/05/2010 |
| 94 U.S. Bank, N.A. (dft) | lamdce | 3:2008-cv-00186 | 440 | 03/31/2008 | 06/16/2008 |
| 95 U.S. Bank (dft) | nedce | 8:1999-cv-00391 | 440 | 09/22/1999 | 06/11/2001 |
| 96 U.S. Bankruptcy Court (ip) | nedce | 8:2009-cv-00299 | 440 | 08/28/2009 | 04/18/2011 |
| 97 U.S. Bankruptcy Court (ip) | nedce | 8:2009-cv-00300 | 440 | 08/28/2009 | 04/18/2011 |
| 98 U.S. Bankruptcy Court (ip) | nedce | 8:2009-cv-00301 | 440 | 08/28/2009 | 04/18/2011 |
| 99 U.S. BANKRUPTCY COURT (dft) | paedce | 2:2008-cv-03608 | 440 | 07/14/2008 | 08/06/2008 |
| 100 U.S. BANKRUPTCY COURT (dft) | pawdce | 2:2007-cv-01288 | 440 | 09/24/2007 | 03/09/2009 |
| 101 U.S. Bankruptcy Court John or Jane Doe Deputy Clerk (dft) | ohndce | 1:1996-cv-01068 | 440 | 05/22/1996 | 01/09/1997 |
| 102 U.S. Banks (dft) | kywdce | 1:2007-cv-00027 | 440 | 02/13/2007 | 09/13/2007 |
| 103 U.S. Bankcorp (dft) | ordce | 6:2010-cv-06244 | 440 | 08/11/2010 | |
| 104 U.S. Bankruptcy Clerk - Omaha (aty) | nedce | 8:2004-cv-00377 | 440 | 08/12/2004 | 05/11/2006 |
| 105 U.S. Bankruptcy Court District of Nevada (dft) | nvdce | 2:2010-cv-02105 | 440 | 12/03/2010 | 02/08/2011 |
| 106 U.S. BANKRUPTCY COURT EASTERN DIVISION (dft) | paedce | 2:2011-cv-02953 | 440 | 04/28/2011 | 05/06/2011 |
| 107 U.S. Banks (dft) | kywdce | 1:2008-cv-00101 | 440 | 07/14/2008 | 05/15/2009 |
| 108 U.S. Banks (dft) | kywdce | 3:2010-cv-00457 | 440 | 06/30/2010 | 08/20/2010 |

Receipt 11/26/2011 19:19:50 82176186

User
Client
Description Civil Party Search
            Name u.s. bank NOS 440 All Courts Page: 2

            You have previously been billed for this page.
Pages 1 ($0.00)

PEMSJ 018

 **Larry Saccato <ljsaccato@gmail.com>**

---

# 2011.11.20 Defendants Motion to Stay Discovery.docx

---

**Chris Kayser <cjkayser@larkinsvacura.com>**                    **Mon, Nov 21, 2011 at 9:38 AM**
To: Larry Saccato <ljsaccato@gmail.com>

Larry – that sounds like a reasonable compromise.  I'll revise the Motion to note that it is unopposed and is only applying to further the depositions.  I'll let you look at the redraft before it is filed.   As far as the interrogatories and admissions are concerned, we will answer those but I can tell you that it was my mistake not to redact the social security number and account number.  It was completely inadvertent and I apologize for the mistake.


**From:** Larry Saccato [mailto:ljsaccato@gmail.com]
**Sent:** Monday, November 21, 2011 8:52 AM
**To:** Chris Kayser
**Subject:** Re: 2011.11.20 Defendants Motion to Stay Discovery.docx

[Quoted text hidden]

---

*PE MSS 019*



**Larry Saccato <ljsaccato@gmail.com>**

# Violation of thePacer e-file rules and FRCP 5.2

**Larry Saccato <ljsaccato@gmail.com>**                    **Tue, Nov 8, 2011 at 1:47 PM**
To: pacer@psc.uscourts.gov, jill_wright@ord.uscourts.gov, Chris Kayser <cjkayser@larkinsvacura.com>, Larry
Saccato <ljsaccato@gmail.com>

To all concerned parties:

I would like to make official notice and file an official complaint against Christopher Kayser, of Larkin & Vacura,
a Portland Oregon Law Firm pursuant to Pacers own -e-filing guidelines, policies and precedures and Federal
Rules of Civil Procedure Rule 5.

Rule 5.2. Privacy Protection For Filings Made with the Court
(a) Redacted Filings.
Unless the court orders otherwise, in an electronic or paper filing with the court that contains an individual's
social-security number,
taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-
account number, a party
or nonparty making the filing may include only:
(1) the last four digits of the social-security number and taxpayer-identification number;
(2) the year of the individual's birth;
(4) the last four digits of the financial-account number.

The exact location of the violation of placing nu-redacted information into the public preview is:
"Case 6:10-cv-06244-HO Document 49 Filed 11/07/11 Page 4 of 24 Page ID#: 199"

.

Regards,

Larry Saccato.
ljsaccato@gmail.com